UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                              )
CHRISTOPHER LACCINOLE,        )
                              )
         Plaintiff,           )
                              )
    v.                        )   C.A. No. 14-404 S
                              )
JUDY B. ASSAD,                )
JAMES D. SYLVESTER, and       )
THE VILLAGE LOWER SCHOOL, INC.,)
                              )
         Defendants.          )
_____)
```

**MEMORANDUM AND ORDER**

Plaintiff, Christopher Laccinole ("Laccinole"), has brought three suits relating to attempts to collect the same debt — moneys he allegedly owes to The Village Lower School, Inc. ("The Village Lower School"). In the first suit, C.A. No. 14-404 S, Laccinole names Judy B. Assad ("Assad"), James D. Sylvester ("Sylvester"), and The Village Lower School as defendants. In the other two matters, C.A. No. 14-447 S and C.A. No. 14-508 S, Laccinole names Assad as the sole defendant. The Court consolidated these actions for more efficient case management. (ECF Nos. 37 (14-404), 18 (14-447), and 13 (14-508).)

This Memorandum and Order considers two motions currently pending before the Court in 14-404: Assad's Motion for Judgment on the Pleadings (ECF No. 9) ("Assad's Mot.") and Sylvester's Motion

to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 12) ("Sylvester's Mot."). For the reasons set forth below, both motions are granted.

I. Background

The alleged facts in this debt collection drama are relatively straight forward. Laccinole, a resident of Narragansett in Washington County, Rhode Island, has two alleged antagonists. The first, Assad, is a licensed Rhode Island attorney — not a registered debt collector — who sought to collect a debt Laccinole owed to Assad's client, The Village Lower School. (Am. Compl. ¶¶ 20, 71, 73, 86, ECF No. 2; Ex. B to Am. Compl., ECF No. 2-2.) The second is Sylvester, a Rhode Island constable and process server, who, like Assad, is not a registered debt collector. (Am. Compl. ¶¶ 29, 72, ECF No. 2.)

The present action focuses on Assad's attempted to commence a civil suit (the "state collection action") against Laccinole related to a debt to The Village Lower School. (Am. Compl. ¶ 71, ECF No. 2; see Exs. A & B to Am. Compl., ECF Nos. 2-1 & 2-2.) On August 27, 2014, Sylvester served Laccinole a summons and a complaint alleging that he owed $8,075.00 to the school. (Am. Compl. ¶¶ 72, 78, ECF No. 2; Exs. A & B to Am. Compl., ECF Nos. 2-1 & 2-2.) The complaint also referenced a copy of an "account" outlining the debt, which it purported to attach as Exhibit A to the complaint. (Id. at ¶ 82.) The exhibit, however, was not attached. (Am. Compl. ¶¶ 82-83, ECF No. 2.) During service,

2

Sylvester circled Assad's name on the complaint, drew an arrow to Assad's phone number, and told Laccinole to "just call her and you can set up payments so you don't have to go to court." (Id. ¶¶ 77-78, ECF No. 2.)

At the time of service, Assad had not yet filed the state collection action. (Am. Compl. ¶ 91, ECF No. 2.)  The operable Rhode Island District Court Rule at the time gave a plaintiff ten days to file a complaint after serving it on a defendant. See R.I. R. Dist. Ct. Civ. Rule 3 (2014).  Assad's ten day window technically expired on Saturday, September 6, 2014, but she did not file the complaint until the following Monday, September 8, 2014. (Ex. A to Assad's Mot., ECF No. 9-2.)[1]  Laccinole moved to dismiss the complaint alleging that Assad improperly served Laccinole and that Assad filed the complaint two days after the service period prescribed by the Rhode Island Civil Rules. (Ex. D to Assad's Mot., ECF No. 9-5.)  Assad opposed the motion and filed an affidavit from Sylvester recounting how he served Laccinole. (Ex. D to Am. Compl., ECF No. 2-4.)  In the affidavit, Sylvester averred, among other things, that he circled Assad's

---

[1] The Court takes judicial notice of the state collection action pleadings Assad attaches to her motion, which it can properly do without converting the motion to one for summary judgment. See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss. Matters of public record ordinarily include documents from prior state court adjudications." (citations and internal quotation marks omitted)).

name and phone number on the complaint and told Laccinole that he could contact Assad.  (Id.)  The Rhode Island trial court denied Laccinole's motion.  (Ex. E to Assad's Mot., ECF No. 9-6.)

On September 11, 2014, Laccinole commenced the present action.  On September 29, 2014, Laccinole amended his complaint (ECF No. 2) ("Amended Complaint") alleging thirteen counts against Assad, Sylvester, and The Village Lower School based on Assad and Sylvester's respective roles in filing the state collection action.  The thirteen counts include four Federal Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692, et seq.) claims against Assad and Sylvester (Counts I, II, III, and IV), four Rhode Island Fair Debt Collection Practices Act ("RI FDCPA") (R.I. Gen. Laws § 19-14.9-1, et seq.) claims against Sylvester (Counts V, VI, VII, and VIII), and five claims against all three defendants: a Rhode Island Deceptive Trade Practice Act claim ("RI DTPA") (R.I. Gen. Laws § 6-13.1-1, et seq.) (Count IX), a fraud claim (Count X), a civil conspiracy claim (Count XI), a "Right to Privacy" claim (Count XII), and a "Civil Liability for Crimes and Offenses" claim (Count XIII).  Assad has moved for judgment on the pleadings as to all of the claims against her pursuant to Fed. R. Civ. Pro. 12(c) (ECF No. 9), and Sylvester has moved to dismiss all of the claims against him pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 12).

II. Legal Standard

The standard of review is the same for both a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and a motion to dismiss under Rule 12(b)(6).  Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014). Under both rules, the court must view the facts contained in the pleadings in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  To survive either motion, however, plaintiff must present "factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'"  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007)).  Put another way, "[w]hile detailed factual allegations are not required, 'a formulaic recitation of the elements of a cause of action' is not sufficient. DeLucca v. Nat'l Educ. Ass'n of Rhode Island, 102 F. Supp. 3d 408, 411 (D.R.I. 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

In reviewing motions brought under rules 12(c) and 12(b)(6), courts ordinarily are limited to reviewing the complaint and documents attached to it.  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).  There are, however, "exception[s] for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for

5

documents sufficiently referred to in the complaint." DeLucca, 102 F. Supp. 3d at 411-12 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)); Curran, 509 F.3d at 44 (applying rule to motions brought under Rule 12(c)).  Generally, courts may consider documents from prior state court proceedings in deciding motions to dismiss as "public records." Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) ("Matters of public record ordinarily include "documents from prior state court adjudications."); Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) ("And a court ordinarily may treat documents from prior state court adjudications as public records.").

III. Discussion

Before considering Laccinole's individual causes of action, the Court pauses to consider two allegations – what Laccinole characterizes as "unlawful" and "criminal" conduct – forming the core of many of Laccinole's claims: (1) that Assad and Sylvester engaged in the unauthorized practice of law ("UPL") when Sylvester served Laccinole; and (2) that Assad and Sylvester should have registered as debt collectors under Rhode Island law.  Both of these allegations are baseless and disposing of them now will streamline the analysis of the remainder of Laccinole's claims.

Laccinole bases his UPL claim on Sylvester's comment that Laccinole could avoid court by calling Assad to set up a payment plan.  (Am. Compl. ¶¶ 78-79, 100-104, ECF No. 2.)  According to

Laccinole, Sylvester's comments constituted legal advice and a settlement negotiation under R.I. Gen. Laws 11-27-2(2) & (3). Aside from quoting the statutory language, however, Laccinole cites to no authority to support his contention that Sylvester's conduct meets either definition and this Court has found none. While "[w]e must remember that the practice of law at a given time cannot be easily defined," Unauthorized Practice of Law Comm. v. State, Dep't of Workers' Comp., 543 A.2d 662, 665 (R.I. 1988), Laccinole's allegations simply do not suggest Sylvester practiced law.  Accordingly, his UPL allegations do nothing to support his other claims.

Laccinole also alleges that Assad and Sylvester acted unlawfully by not registering as debt collectors.  The RI FDCPA requires registration as a debt collector when a person is engaged in the "business of a debt collector," "engage[d] in soliciting the right to collect or receive payment for another . . .", or advertises for or solicits in print for the right to collect or receive payment from another.  R.I. Gen. Laws § 19-14.9-12(1). The statute, however, expressly excludes attorneys and process servers from its definition of "debt collector."  R.I. Gen. Laws § 19-14.9-3(5)(d) (exempting "[a] person while serving or attempting to serve legal process on another person in connection with the judicial enforcement of a debt."); R.I. Gen. Laws § 19-14.9-2(5)(g) (exempting "[a]ttorneys-at-law collecting a debt on

7

behalf of a client."). Here, Laccinole's Amended Complaint concedes that Assad is an attorney and Sylvester a process server. (Am. Compl. ¶¶ 20, 29-30, ECF No. 2.) Thus, even taken in the light most favorable to Laccinole, his Amended Complaint alleges facts that exempt Assad and Sylvester from the RI FDCPA's registration requirement and, like his UPL allegation, his "failure to register" argument does not support his other claims.[2]

A.   FDCPA Claims

The Court now turns to Laccinole's FDCPA claims. Congress created the statute to protect consumers from "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). To that end, the Act "regulates debt collectors' tactics and, inter alia, creates a private cause of action for victims of oppressive or offensive collection agency behavior." Chiang v. Verizon New England Inc., 595 F.3d 26, 41 (1st Cir. 2010) (internal quotation

---

[2] Laccinole's only reasonable argument in support of his failure to register claim is that Sylvester should have registered as a debt collector because he went beyond the duties of a process server when he served the complaint on Laccinole. (Pl.'s Opp'n to Sylvester's Mot. 3-5, ECF No. 30-1.) Laccinole is correct that Sylvester, as a process server, can still be liable under the FDCPA and RI FDCPA for conduct falling outside his duties as a process server. See Andrews v. S. Coast Legal Servs., Inc., 582 F. Supp. 2d 82, 88 (D. Mass. 2008) ("[A] person who goes beyond being merely a messenger in serving legal process and engages in prohibited abusive or harassing activities to force an individual to repay a debt is no longer exempt under the legal process server exception."(internal citation and quotation marks omitted)). This, however, does not implicate the statute's registration requirement, from which Sylvester was clearly exempt.

marks and citations omitted).   In assessing a debt collector's representations or means of collecting debts, courts in this Circuit employ an objective test to determine whether the conduct would have disabled an "unsophisticated consumer" from knowingly deciding how to handle the debt collection effort.   See Pollard v. Law Office of Mandy L. Spaulding, 766 F.3d 98, 103 (1st Cir. 2014). This standard "protects all consumers, including the inexperienced, the untrained, and the credulous" but will not hold debt collectors liable for a consumer's "chimerical or farfetched" understanding of a communication.   Id. at 103-04.   Here, Laccinole alleges that Assad and Sylvester's collection efforts violated multiple sections of the FDCPA.   The Court considers each in turn.

1.   Abusive or Harassing Conduct in Violation of 15 U.S.C. § 1692d

In Count I, Laccinole alleges that Assad and Sylvester's collection tactics were abusive and harassing in violation of 15 U.S.C. § 1692d.   Section 1692d prohibits tactics, "the natural consequence of which is to harass, oppress, or abuse any person" and then lists six non-exhaustive examples of such conduct.   15 U.S.C. § 1692d.   These examples include the use or threat of violence, the use of obscene or profane language, and publishing a list of consumers who refuse to pay a debt.   Id.   Laccinole does not allege conduct that easily fits into one of § 1692d's categories.   Instead, he argues more generally that Defendants

used "sham legal papers" to harass and abuse him.  (Pl.'s Opp'n to Assad's Mot. 9, ECF No. 32-1.)  Specifically, Laccinole claims that Sylvester served him the complaint before it was filed and that Assad filed the complaint after the ten day window for doing so had closed.

As a general rule, threatening to file or filing a lawsuit does not, by itself, constitute abusive or harassing conduct violative of § 1692d.  Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985) (a threatened lawsuit might cause a consumer "embarrassment, inconvenience, and further expense    . . ." but "even a consumer susceptible to harassment, oppression, or abuse would not have been harassed, oppressed, or abused by the [threat] in and of itself." (emphasis in original)); Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006) (same); Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1305-06 (11th Cir. 2015) (same).  This is the case even if a collection lawsuit is ultimately unsuccessful.  See, e.g., Hemmingsen v. Messerli & Kramer, P.A., 674 F.3d 814, 820 (8th Cir. 2012) ("That the state court granted [plaintiff] summary judgment is not evidence that [the debt collector's] aggressive pursuit of [an] unpaid account in litigation violated statutory prohibitions targeted at abusive pre-litigation practices.").  Nevertheless, threatening to file a lawsuit that a debt collector cannot lawfully file or does not intend to file can constitute harassment under § 1692d.  See Curto

v. Palisades Collection, LLC, No. 07-CV-529(S), 2011 WL 5196708, at *5 (W.D.N.Y. Oct. 31, 2011) ("Bringing suit where a prior collection action has been dismissed with prejudice could constitute violations under § 1692d.").

Here, Laccinole cannot show that Defendants' service and filing of the state collection action violated § 1692d. First, the applicable civil rules at the time permitted plaintiffs to file complaints up to ten days after a process server effectuate service. See R.I. R. Dist. Ct. Civ. Rule 3 (2014).[3] Thus, that Sylvester served Laccinole prior to filing does not render service of the complaint abusive or harassing.

Further, assuming, arguendo, that Laccinole's allegation is correct and Defendants filed the collection action two days late, this does not amount to a violation of § 1692d either. Even with the alleged error, Laccinole does not, and cannot, allege that

---

[3]    The Rhode Island District Court Rules were amended effective November 5, 2014. Sylvester served Laccinole the collection action on August 27, 2014, prior to the amendments taking effect. (Am. Compl. ¶ 72, ECF No. 2.) Accordingly, the operative rule at the time read in relevant part:

> **3.  Commencement of action. -** A civil action is commenced . . . (3) by delivery of a summons and complaint to an officer for service. When method (3) is used, the complaint shall be filed with the court within ten (10) days after the completion of service.

R.I.D.C.Civ.R. 3 (2014).

Assad lacked the ability or intent to file the state collection action (for example, because her claim was barred by the statute of limitations or a final judgment).  Assad, in fact, filed the action and prevailed on Laccinole's motion to dismiss for improper service of process.  (See Ex. E to Assad's Mot., ECF No. 9-6.) Thus, even construing Laccinole's factual allegations in the light most favorable to him, his claim arises out of nothing more than the lawful commencement of a collection action in state court and does not violate § 1692d.

> 2.   False or Misleading Representations in Violation of 15 U.S.C. § 1692e

Laccinole brings Count II under 15 U.S.C. § 1692e, which generally prohibits debt collectors from using false, deceptive or misleading practices when collecting a debt.  Examples of proscribed conduct include lying about the amount or status of a debt, threatening to take legal action that a collector does not intend or cannot legally take, and falsely representing that documents are legal process.  See 15 U.S.C. § 1692e(1)-(16). Laccinole contends that Assad and Sylvester violated § 1692e by: (1) threatening, but not filing the collection action; (2) creating the false impression that Assad had served him legal process; (3) informing Laccinole that he could avoid court by entering into a payment plan; and (4) serving only a portion of the complaint on him.  (See Pl.'s Opp'n to Assad's Mot. 10-11, ECF No. 32-1.)

Particularly when considered with the underlying state collection action, none of Laccinole's allegations constitute violations of § 1692e.

First, as detailed above, Assad and Sylvester did not falsely threaten to file a collection action or falsely serve process on Laccinole.  They served him and filed the complaint.  Further, while Laccinole alleges that Assad filed the state court action two days after the ten day deadline (on a Monday rather than a Saturday), even assuming _arguendo_ that this was actually a procedural error, it did not take away Assad's legal ability to sue for the debt, obscure the fact that Assad was commencing the state court action, or affect Laccinole's ability to respond to the action.  As the summons clearly stated, Laccinole was "required to serve upon the plaintiff's attorney, whose name and address appears above, an answer to the complaint . . ." within 20 days after service and file the original answer with the court.  (Ex. A to Am. Compl., ECF No. 2-1.)  Filing the complaint on Saturday, September 6, or Monday, September 8, did not change the fact that Assad was commencing legal action against him to collect a debt he admits he owed, and did not affect Laccinole's ability to follow the instructions on his summons.  Based on this, the alleged procedural error would not be deceptive or misleading to an unsophisticated consumer.  See Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F. App'x 89, 95 (2d Cir. 2012) (violation of

13

procedural rules did not violate FDCPA where they "were not misleading or deceptive as to the nature or legal status of [plaintiff's] debt, nor would they have prevented the least sophisticated consumer from responding to or disputing the action.").

Second, merely informing Laccinole that he could avoid court by entering into a payment plan for his debt did not constitute deceptive or misleading conduct. Absent an allegation that Assad's offer was false or that it was misleading, the offer does not violate § 1692e. See Sutton v. Fin. Recovery Servs., Inc., No. 15-CV-313 (RJD)(CLP), 2015 WL 4662599, at *3 (E.D.N.Y. Aug. 6, 2015) ("As the complaint 'nowhere alleges that the repayment offer was not as represented, this pleading is necessarily insufficient to state a § 1692e(10) claim.'" (internal citation omitted)); Morrison v. Hosto, Buchan, Prater & Lawrence, PLLC, No. 5:09CV00146JLH, 2009 WL 3010917, at *3 (E.D. Ark. Sept. 17, 2009) (letter attached to summons informing debtor that contacting attorney to set up a payment plan "may avoid the necessity of you appearing in Court or filing an answer" was insufficient to support a claim under § 1692e where complaint lacked allegation that statement was false). Here, Laccinole's Amended Complaint does not allege that Assad's offer was false. He simply alleges that Assad, through Sylvester, made an offer to set up a payment plan.

14

Accordingly, this allegation does not support a claim under §
1692e.

Third, Laccinole alleges that Assad's omission of an exhibit
to the complaint violated § 1692e.   According to the complaint,
the attachment was an "accounting" of Laccinole's debt.   The
complaint itself, however, detailed the debt that Laccinole owed:
$8,075.00 to The Village Lower School.   (See Ex. A to Am. Compl.,
ECF No. 2-1.)   Laccinole does not dispute that he owed this debt,
or that the missing attachment in any way obscured his
understanding of Assad's collection action.   Further, and more to
the point, the Court does not see how the missing attachment would
mislead an unsophisticated consumer, particularly considering the
simple and clear statement of the debt in the complaint.   See,
e.g., Richardson v. Midland Funding, LLC, Civil No. CIV. CCB-13-
1356, 2013 WL 6719110, at *4 (D. Md. Dec. 18, 2013) aff'd, 583 F.
App'x 124 (4th Cir. 2014) ("A debt collector's mere failure to
offer evidence sufficient to prove its claim at the time it files
a complaint is not prohibited conduct under the FDCPA."); Johnson
v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 781 (E.D.N.C.
2011) ("To the extent Plaintiffs' allegations imply the filing of
a lawsuit without substantiating documentation is false, deceptive
or misleading, Plaintiffs do not state a claim[.]").   Like his
prior two allegations, the missing attachment does not render the

state collection action misleading and Laccinole has, thus, failed to state a claim under §1692e.

      3.   Unfair Practices in Violation of 15 U.S.C. § 1692f

Count III alleges Defendants violated 15 U.S.C. § 1692f, prohibiting debt collectors from using unfair or unconscionable means to collect a debt. In support of this claim, Laccinole argues that Defendants failed to serve him the complaint, impermissibly sought attorney's fees, and attached a false affidavit to a subsequent filing in the state collection action. (Pl.'s Opp'n to Assad's Mot. 11-12, ECF No. 32-1.) None of these allegations state a cognizable claim under § 1692f. First, as detailed above, Laccinole's Amended Complaint alleges that Sylvester served him (Am. Compl. ¶¶ 72, 81, ECF No. 2.), an admission confirmed by the state collection action pleadings (see Ex. A to Assad's Mot., ECF No. 9-2). Thus, Laccinole's assertion that Defendants failed to serve him with the complaint has no basis in fact.

Second, that Assad included a request for attorney's fees in her complaint does not violate the FDCPA. As Laccinole points out, § 1692f(1) prohibits the collection of any amount of money, including fees, unless the amount is authorized in an agreement or permitted by law. Rhode Island law permits the collection of attorney's fees for breach of contract actions such as this one.

<u>See</u>  R.I. Gen. Laws § 9-1-45.  Accordingly, Assad's request for attorney's fees is permitted by law and does not violate §1692f.[4]

Finally, the affidavit Sylvester submitted in state court is not part of an unfair or unconscionable means of collecting a debt. To be sure, filings in state court collection actions can violate § 1692f.  <u>See</u> <u>Donohue v. Quick Collect, Inc.</u>, 592 F.3d 1027, 1031-32 (9th Cir. 2010) ("[A] complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of [15 U.S.C. § 1692f]").  To do so, however, the filing must misrepresent the status or the character of the debt, or constitute some other unfair or unconscionable litigation tactic such as submitting false or baseless statements to the court.  <u>See, e.g.</u>, <u>Sykes v. Mel Harris & Assocs., LLC</u>, 757 F. Supp. 2d 413, 423-24, n.10 (S.D.N.Y. 2010) (collecting cases); <u>contra</u> <u>Hemmingsen</u>, 674 F.3d at 820 (collection action pleadings "had more than enough basis in fact to defeat as a matter of law [plaintiff's claims] that [defendant] . . . used 'unfair or unconscionable means to collect or attempt to collect any debt,' § 1692f").

Here, aside from describing Sylvester's affidavit as "false," Laccinole does not allege that Sylvester lacked personal knowledge

---

[4] Laccinole cites to <u>McCollough v. Johnson, Rodenburg & Lauinger, LLC</u>, 637 F.3d 939 (9th Cir. 2011), to support his claim that Assad's attorney's fee request violates § 1692f.  <u>McCollough</u>, however, is distinguishable from Laccinole's claims.  There, attorney's fees were not permitted under Montana law.  <u>Id.</u> at 950 n. 2.  In Rhode Island, as noted above, just the opposite is true.

to make his averments, does not specify how Sylvester lied in the affidavit, and does not explain how those lies mislead him. Indeed, a fair reading of Sylvester's affidavit reveals that it mirrors the allegations in Laccinole's Amended Complaint: that Sylvester served Laccinole on August 27, 2014 (compare Am. Compl. ¶ 72, ECF No. 2, with Ex. D ¶¶ 2-6 to Am. Compl., ECF No. 2-4), that Sylvester underlined the amount Laccinole allegedly owed The Village Lower School and circled Assad's telephone number (compare Am. Compl. ¶¶ 77-78, with Ex. D ¶ 7 to Am. Compl.), and told Laccinole that he could contact Assad (compare Am. Compl. ¶ 78, with Ex. D ¶ 9-10 to Am. Compl.).  Like his other assertions, his argument relating to Sylvester's affidavit fails to allege a violation of § 1692f.

> 4.  Furnishing Certain Deceptive Forms in Violation of
>     15 U.S.C. § 1692j

Laccinole brings his final FDCPA claim under § 1692j.  This section prohibits debt collectors from using forms that give the false impression a non-existent third party is involved in the debt collection.  15 U.S.C. § 1692j(a); Laccinole v. Twin Oaks Software Dev., Inc., No. CA 13-716 ML, 2014 WL 2440400, at *7 (D.R.I. May 30, 2014); Avila v. Riexinger & Assocs., LLC, Nos. 13 CV 4349(RJD)(LB), 14 CV 2740(RJD)(LB) 2015 WL 1731542, at *10 (E.D.N.Y. April 14, 2015).  In other words, § 1692j prohibits The Village Lower School from serving a collection letter on Laccinole

with Assad's name on it if Assad is not involved in the collection of the debt.

Here, Laccinole alleges that Assad violated § 1692j because <u>Assad</u> served Laccinole and <u>Assad</u> gave him the false impression <u>Assad</u> was commencing a collection lawsuit against him.  (Pl.'s Opp'n to Assad's Mot. 12-13, ECF No. 32-1.)  Laccinole, thus concedes that Assad participated in the collection action, a concession that defeats his § 1692j claim.  <u>See</u> <u>Wells v. McDonough</u>, No. 97 C 3288, 1999 WL 966431, at *5 (N.D. Ill. Sept. 29, 1999) (no § 1692j claim where attorney "had some actual participation in the debt collection process" and did not just lend his name to collection letters).[5]

B.   RI FDCPA Claims

Laccinole also brings four claims against Sylvester under the RI FDCPA.  In Count V, he alleges that Sylvester's conduct was harassing and abusive in violation of R.I. Gen. Laws § 19-14.9-6, in Count VI he alleges that Sylvester made false or misleading representations in violation of R.I. Gen. Laws § 19-14.9-7, in

---

[5] A review of the summons and complaint confirms that neither document gave the false impression a third-party was involved in the debt collection process.  The summons clearly states that the plaintiff in the collection action is "The Village Lower School" and that Judy B. Assad is "Plaintiff's Attorney." (Ex. A to Am. Compl., ECF 2-1.)  Similarly, the complaint clearly spells out the debt Assad is collecting —$8,075.00 that Laccinole owes the school. (Ex. B to Am. Compl., ECF No. 2-2.)  Assad then signs the complaint on behalf of her client, The Village Lower School. (<u>Id.</u>)

Count VII he alleges that Sylvester used unfair and unconscionable means to collect a debt in violation of R.I. Gen. Laws § 19-14.9-8, and in Count VIII, he alleges that Sylvester furnished a deceptive form while attempting to collect a debt in violation of R.I. Gen. Laws § 19-14.9-11. Sylvester argues that each of these claims should fail for two reasons. First, he argues that he is immune from suit under R.I. Gen. Laws § 45-16-4.5, which grants constables immunity from civil actions for "acts of commission or omission arising directly out of his or her negligent serving or executing the process . . . ." R.I. Gen. Laws § 45-16-4.5. In the alternative, Sylvester argues that Laccinole's RI FDCPA claims fail because the statute exempts constables from its definitions of debt collectors. See R.I. Gen. Law § 19-14.9-3(5)(d).

As noted above, the process server exemption from FDCPA liability only extends to the server's duties as a messenger serving process. "[A] person who goes beyond being merely a messenger in serving legal process and engages in prohibited abusive or harassing activities to force an individual to repay a debt is no longer exempt under the legal process server exception." Andrews v. S. Coast Legal Servs., Inc., 582 F. Supp. 2d 82, 88 (D. Mass. 2008). Neither party has addressed the application of this doctrine to R.I. Gen Law § 45-16-4.5 or the RI FDCPA and the Court need not decide the issue. The provisions of the RI FDCPA under which Laccinole brings his claims against Sylvester are nearly

identical to the FDCPA claims he brought against both Defendants. Compare R.I. Gen. Laws § 19-14.9-6, with 15 U.S.C. § 1692d; R.I. Gen. Laws § 19-14.9-7, with 15 U.S.C. § 1692e; R.I. Gen. Law § 19-14.9-8, with 15 U.S.C. § 1692f; R.I. Gen. Law § 19-14.9-11, with 15 U.S.C. § 1692j. Accordingly, setting aside the immunity issue, Laccinole's RI FDCPA claims fail for the same reasons his FDCPA claims fail.

C. RI DTPA Claims

In Count IX, Laccinole alleges that Assad and Sylvester's conduct violated the RI DTPA. The RI DTPA is a consumer protection statute which prohibits a number of activities that are "unfair or deceptive." Park v. Ford Motor Co., 844 A.2d 687, 692 (R.I. 2004). To adequately plead a claim, Laccinole must allege (1) that he was the subject of a deceptive practice or act in connection with the purchase of a service; and (2) that he suffered an ascertainable loss of money or property as a result of the deceptive practice. R.I. Gen. Laws § 6-13.1-5.2; Twin Oaks, 2014 WL 2440400 at *8, *12.

Laccinole's complaint fails on the first element. For conduct to be deceptive it must, among other things, be likely to mislead a reasonable consumer and it must be material to a consumer's choices or conduct. Long v. Dell, Inc., 93 A.3d 988, 1003-04 (R.I. 2014). As detailed above, Laccinole has not alleged any facts that would mislead an objectively unsophisticated consumer, a more

21

stringent standard than the reasonableness standard applied to RI DTPA claims. Like with his FDCPA claim, Laccinole has failed to state viable claim in Count IX.

D.   Fraud Claims

In Count X, Laccinole brings a common law fraud claim against Assad and Sylvester.  To establish a prima facie case of fraud in Rhode Island, a plaintiff must allege facts to show that (1) the defendant made a false representation; (2) the defendant intended to induce the plaintiff to rely on that representation; and (3) the plaintiff justifiably relied on the representation to his or her detriment.  Women's Dev. Corp. v. City of Central Falls, 764 A.2d 151, 160 (R.I. 2001).  Further, to survive a motion to dismiss, a plaintiff must meet Fed. R. Civ. Pro. 9(b)'s heightened pleading standard, which requires plaintiffs to "specify the who, what, where, and when of the allegedly false or fraudulent representation." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

Here, it is arguable whether Laccinole's Amended Complaint, as clarified by his Opposition Memorandum, meets Rule 9(b)'s heightened pleading standard.  As Assad points out, rather than specify what conduct supports his fraud claim, Laccinole merely lists the paragraph numbers for numerous paragraphs in his Amended Complaint under each element of his claim.  (See Pl.'s Opp'n to Assad's Mot. 16-17, ECF No. 32-1.)  Many of these paragraphs

22

contain no factual allegations and Laccinole provides no explanation as to why the factual allegations he does reference amount to fraud.

Nevertheless, setting aside any pleading deficiencies, the facts of this case are uncomplicated and fail to support numerous elements of Laccinole's common law fraud claim. First, as detailed above, Defendants did not make false representations to Laccinole. They served Laccinole with a lawsuit outlining a debt he owed and filed that lawsuit. Second, Laccinole has failed to allege sufficient facts that he relied on Defendants' representations to his detriment. Laccinole cites to only one allegation that even references his reliance: "Plaintiff did in fact rely upon such misrepresentation, concealment and omissions to his detriment." (Am. Compl. ¶ 109, ECF No. 2.) This language merely parrots the language of his fraud claim's third element, and thus, does nothing to support his claim even if the stricter Rule 9(b) pleading standard did not apply. Laccinole has not adequately pled multiple elements of his fraud claim and, thus, has failed to state a claim.

E.   Civil Conspiracy Claims

Count XI advances a civil conspiracy claim in an attempt to hold Assad, Sylvester, and The Village Lower School vicariously liable for each other's conduct. To adequately plead civil conspiracy, a plaintiff must allege that "(1) there was an agreement between two or more parties and (2) the purpose of the

23

agreement was to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means." <u>Smith v. O'Connell</u>, 997 F. Supp. 226, 241 (D.R.I. 1998) (citing <u>Stubbs v. Taft</u>, 149 A.2d 706, 708-09 (1959)).  Further, "[c]ivil conspiracy is not an independent basis of liability, but merely a means of establishing joint liability for tortious conduct. Thus, a civil conspiracy claim requires a valid underlying intentional tort theory." <u>Guilbeault v. R.J. Reynolds Tobacco Co.</u>, 84 F. Supp. 2d 263, 268 (D.R.I. 2000) (citing <u>ERI Max Entm't, Inc. v. Streisand</u>, 690 A.2d 1351, 1354 (R.I. 1997)).  Here, as detailed in this Order, Laccinole has not pleaded any valid theories of recovery, and, thus, his civil conspiracy claim cannot survive.

F.   Right to Privacy Claims

In Count XII, Laccinole alleges that Assad and Sylvester violated Rhode Island's statutory right to privacy when they served him with the state collection action. (<u>See</u> Am. Compl. ¶ 167, ECF No. 2.)  Rhode Island's privacy law provides, <u>inter alia</u>, that individuals have a right "to be secure from unreasonable intrusion upon one's physical solitude or seclusion." R.I. Gen. Laws § 9-1-28.1(a)(1).  "To establish a claim under [§ 9-1-28.1(a)(1)], some invasion of a person's physical solitude or seclusion must have occurred." <u>Swerdlick v. Koch</u>, 721 A.2d 849, 858 (R.I. 1998). Conduct that occurs in full public view, even if in the vicinity

of an individual's residence, does not intrude on a person's physical solitude or seclusion.  Id. at 857.

Here, Laccinole makes clear in his Opposition that the offensive conduct — being served with legal process — occurred in full public view: "Sylvester appeared with a badge, knocked on Plaintiff's door, asked him to step outside . . ." (Pl.'s Opp'n to Assad 17-18, ECF No. 32-1.)  This type of public conduct does not support an invasion of privacy claim.

G.   Civil Liability for Crimes and Offenses

In Count XIII, Laccinole attempts to recover civil damages for Assad and Sylvester's alleged criminal conduct under R.I. Gen. Laws § 9-1-2.  Section 9-1-2 allows plaintiffs to bring civil claims to recover damages incurred from criminal offenses.  See R.I. Gen. Laws § 9-1-2.  Thus, to plead a claim under § 9-1-2, Laccinole must sufficiently plead an underlying criminal offense. See, e.g., Getty Petroleum Mktg., Inc. v. 2211 Realty, LLC, No. CIV.A. 11-40003-FDS, 2012 WL 527655, at *7 (D. Mass. Feb. 16, 2012) ("Although '[i]t is not necessary for the [claimant] to allege the commission of the crime, which is the basis of his claim for damages, with the technical accuracy required in the criminal complaint[,] . . . it must be described sufficiently for identification.'" (quoting Williams v. Smith, 28 R.I. 531, 68 A. 306, 308-309 (R.I. 1907)).  Laccinole alleges that Assad and Sylvester acted criminally when they engaged in the unauthorized

25

practice of law and failed to register as debt collectors.  As detailed above, Laccinole's Amended Complaint fails to allege facts to support these allegations and, as a result, his civil liability claim fails with them.

IV.  Dismissal with Prejudice

None of Laccinole's thirteen counts state a claim upon which relief can be granted.  The question, however, remains whether the Court should dismiss them with prejudice or grant him leave to amend.  The former is appropriate here. First, Laccinole's account of the conduct that gives rise to this lawsuit, particularly when considered with the state collection action pleadings, is comprehensive.  His Amended Complaint includes over 179 paragraphs, and four attachments.  He then provides further details in support of his claim in his Opposition to both Assad and Sylvester's motions.  Even considering all of this information in the light most favorable to Laccinole, he has failed to state claims under the FDCPA, RI FDCPA, RI DTPA, and his other causes of action.  Second, while Laccinole is <u>pro se</u>, this Court agrees with Judge Lisi that he is a very sophisticated <u>pro se</u> Plaintiff.  <u>Twin Oaks</u>, 2014 WL 2440400 at *1.  Indeed, he has filed fourteen actions, including the three actions associated with The Village Lower School debt, which seek relief under the FDCPA, RI FDCPA, and other statutes for practices his creditors use to collect his

debts.[6]   In short, this is not Laccinole's first rodeo.   And, in
any event, based on the detailed pleadings before the Court,
granting him leave to amend would be futile.   <u>Brown v. Rhode
Island</u>, 511 F. App'x 4, 5 (1st Cir. 2013).

---

[6] <u>See Laccinole v. SageStream, LLC</u>, C.A. No. 15-549S (D.R.I.
December 23, 2015) (complaint alleges violations of the RI DPTA;
motion to remand pending); <u>Laccinole v. IC Sys., Inc.</u>, C.A. No.
15-337M (D.R.I. August 11, 2015) (complaint alleges violations of
FDCPA, RI-FDCPA, and RI-DTPA; stayed for arbitration); <u>Laccinole
v. Cavalry Portfolio Servs., LLC</u>, C.A. No. 15-141S (D.R.I. April
7, 2015) (complaint alleges violations of FCRA, FDCPA, and RI-
DTPA; dismissed prior to answer); <u>Laccinole v. Collect Am., LTD</u>,
C.A. No. 15-131ML (D.R.I. April 2, 2015) (complaint alleges
violations of FDCPA, RI-FDCPA, and RI-DTPA; dismissed prior to
answer) <u>Laccinole v. Recovery Res., LLC</u>, C.A. No. 14-455S (D.R.I.
October 14, 2014) (complaint alleges violations of FDCPA, RI-
FDCPA, and RI-DTPA; remanded to state court due to improper
removal), <u>Laccinole v. Twin Oaks Software Dev., Inc.</u>, C.A. No. 13-
716S (D.R.I. September 25, 2013) (complaint alleges violations of
FDCPA, RI-FDCPA, and RI-DTPA; defendant granted summary judgment);
<u>Laccinole v. PFS III, LLC</u>, C.A. No. 13-434S (D.R.I. June 11, 2013)
(complaint alleges violations of FDCPA, RI-FDCPA, RI-DTPA and
TCPA; dismissed prior to answer); <u>Laccinole v. United Recovery
Sys., LP</u>, C.A. No. 13-291S (D.R.I. Apr. 30, 2013) (complaint
alleges violations of FDCPA, RI-FDCPA, RI-DTPA, FCRA and Texas
state law claims; dismissed prior to answer); <u>Laccinole v. Prof'l
Account Mgmt., LLC</u>, C.A. No. 13-86S (D.R.I. Feb. 4, 2013)
(complaint alleges violations of FDCPA and RI-DTPA; dismissed
prior to answer); <u>Laccinole v. MB ROI</u>, C.A. No. 12-516L (D.R.I.
Jul. 12, 2012) (complaint alleges violations of FDCPA and RI-DTPA;
dismissed prior to answer); <u>Laccinole v. Healthcare Revenue
Recovery Grp., LLC</u>, C.A. No. 12-283S (D.R.I. Apr. 13, 2012)
(complaint alleges violations of FDCPA and RI-DTPA; dismissed
prior to answer).

V.    Conclusion

For the forgoing reasons, the Court GRANTS Assad's Motion for Judgment on the Pleadings (ECF No. 9) and Sylvester's Motion to Dismiss (ECF No. 12), and hereby dismisses Laccinole's claims with prejudice, the parties to bear their own fees and costs.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date:   March 7, 2016